**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **CRIMINAL NO. GLR-18-0597** |
| ) | |
| **MARCUS PITTS** ) | |
| ) | |
| **Defendant.** ) | |

**GOVERNMENT'S CONSOLIDATED MOTIONS RESPONSE[1]**

The Defendant, Marcus PITTS, a/k/a "Cart Money," is charged with one count of conspiracy to distribute 280 grams or more of crack cocaine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute 280 grams or more of crack cocaine, in violation of 21 U.S.C. § 841. ECF 1. On March 23, 2020, PITTS filed several motions to suppress the evidence in this case, namely, (1) the fruits of a search warrant executed at PITTS' residence at 9103 Poplar Road, Berlin, Maryland, on September 14, 2018, including close to 400 grams of crack cocaine, drug trafficking paraphernalia, nearly $1,500 in cash, and four cell phones; (2) a post-*Miranda* interview with law enforcement during which PITTS admitted that the drugs recovered from his residence belonged to him; (3) the fruits of a search warrant executed on the four cell phones seized on September 14, 2018, including text messages indicating that PITTS was in the business of trafficking crack cocaine; (4) the fruits of a fifth cell phone seized from PITTS' vehicle at the time of his subsequent arrest on January 2, 2019, including text messages indicating that he had continued trafficking crack cocaine after released from state custody on bond; and (5)

---

[1] The government's motions response was originally due on May 27, 2020, *see* ECF 48, but on April 10, 2020, the Court issued Standing Order 2020-07 on Court Operations, which extended all filing deadlines originally set to fall between March 16, 2020, and June 5, 2020 by eighty-four (84) days. As a result of this Order, the motions response deadline in this case was effectively extended until August 19, 2020.

the fruits of a second search warrant executed at PITTS' residence at 9103 Poplar Road after his arrest on January 2, 2019. ECF 49–53.

These motions should be denied. All of the search warrants were supported by probable cause, and law enforcement relied on the warrants in good faith. PITTS' statements to law enforcement followed a valid *Miranda* waiver and were voluntarily made.

## I.    STATEMENT OF FACTS

In Summer 2018, members of the Worcester County Criminal Enforcement Team ("WCCET") initiated a drug trafficking investigation into the Defendant, Marcus PITTS, a/k/a "Cart Money," after receiving information from several different confidential sources that the Defendant was distributing large amounts of cocaine and crack cocaine in the area of Worcester County, Maryland. The WCCET was familiar with PITTS based on an earlier investigation that began in Summer 2016, which involved similar tips from confidential sources as well as surveillance operations.

On September 11, 2018, members of the WCCET conducted covert surveillance outside the Defendant's residence at 9103 Poplar Road, Berlin, Maryland. They observed a male suspect park on the wrong side of the street in front of the Defendant's residence, leaving the parking lights to the vehicle on. The male suspect entered the residence, exited again a short time later, and drove away. Investigators conducted a traffic stop of the male suspect and recovered a glass smoking pipe and a small amount of suspected cocaine, which field-tested positive for the presence of cocaine. The male suspect acknowledged he had just purchased cocaine from the Defendant inside 9103 Poplar Road, and that he had also purchased cocaine from PITTS in the past.

On September 14, 2018, Detective Gregory Eastman of the WCCET obtained a search warrant for the Defendant's residence and person, which was issued by Judge Gerald V. Purnell

of the District Court of Maryland for Worcester County. *See* Exhibit 1 (Search Warrant for 9103 Poplar Road, Sept. 14, 2018). The statement of probable cause was based on the September 11, 2018 traffic stop and recovery of suspected cocaine; information about PITTS' drug trafficking activity from seven confidential sources and one confidential informant; prior WCCET surveillance operations; a criminal records check, which showed that PITTS had numerous arrests and convictions for drug felony offenses; and the affiant's training and experience in drug trafficking investigations. *See* Ex. 1 at 10–19.

Members of the WCCET executed the search warrant on September 14, 2018 at approximately 5:50 p.m. The northern bedroom in the residence contained multiple pieces of paper addressed to PITTS, as well as men's clothing. From this bedroom, the detectives recovered (1) three cell phones; (2) $1,235 in cash; and (3) thirteen individually tied plastic bags, each containing a white rock-like substance resembling crack cocaine, with a total gross weight of approximately 396 grams. The drug evidence was later submitted to the Maryland State Police ("MSP") drug laboratory, where it was confirmed to be cocaine base, a/k/a "crack cocaine," with a net weight of 365.71 grams.

From the kitchen of the residence, in the area in and around the sink, the detectives recovered (1) a glass Pyrex dish with white residue, (2) a glass measuring cup with white residue, (3) a large open box of baking soda, and (4) a box of sandwich bags. The detectives recognized these items to be tools commonly used to manufature cocaine into crack cocaine, and to package it for distribution. From the trash in the kitchen, the detectives recovered (1) a flatbread plastic bag containing six sandwich bags containing white residue, (2) an empty digital scale box, and (3) a small spiral notepad with handwritten names and numbers that the detectives recognized as a drug ledger or "owe sheet." The MSP drug laboratory confirmed that the white residue found

3

inside the Pyrex dish, measuring cup, and plastic flatbread bag was cocaine.

While detectives were executing the search warrants, PITTS arrived at the residence driving a blue Ford Explorer. A woman named Tanya Hammond also arrived at the residence and identified herself as the Defendant's wife. Detective Eastman placed PITTS under arrest and conducted a search of his person, but did not locate any additional contraband. Detective Eastman also advised PITTS of his Miranda rights, and PITTS stated he understood his rights. After informing PITTS that he was being arrested for possession with intent to distribute crack cocaine, Detective PITTS asked whether PITTS had any questions, and PITTS said no. PITTS was transported to the Berlin Police Headquarters and then to the Worcester County Sheriff's Office.

Detective Eastman recovered a wallet and Motorola cell phone from the tailgate of a truck next to where PITTS had been standing. Investigators believe that PITTS had the wallet and cell phone on his person when he arrived at the residence and placed them on the truck's tailgate just prior to being arrested. PITTS' wife, Tanya Hammond, confirmed that the wallet and cell phone belonged to PITTS. The wallet contained PITTS' Maryland driver's license and $50.

Detective Eastman advised Hammond of her Miranda rights, and she stated she understood her rights and agreed to speak to him without a lawyer present. Hammond stated that she lived at 9103 Poplar Road with PITTS and their son. She confirmed that the northern bedroom of the house where the drugs were recovered was the bedroom she shared with PITTS. When asked about the cocaine recovered from the bedroom, Hammond stated that it was not hers, and she did not know it was in the residence. Hammond was also asked about three vehicles that were parked on the property in front of the residence: the blue Ford Explorer, a GMC Yukon, and a Mazda Protégé. Hammond stated that she primarily drove the Mazda Protégé, although PITTS drove it

on occasion. She stated she did not drive the GMC Yukon or the Ford Explorer.[2]

A K-9 officer was called to the scene. A drug detection dog conducted an exterior scan of the vehicles and gave a positive alert to all three, indicating the presence of narcotics. The vehicles were then searched by Detective Eastman. From the Ford Explorer, Detective Eastman recovered $187 in cash and multiple torn plastic baggies of the type commonly used to package drugs. From the GMC Yukon, he recovered a small sheet of paper with names and numbers that he recognized as a drug ledger or "owe sheet." Detective Eastman did not seize anything from the Mazda Protégé.

At the Worcester County Sheriff's Office, Detective Shane Musgrave of WCCET provided PITTS with a Miranda rights form and read the form to him. PITTS initialed and signed the form, indicating that he understood the rights and agreed to speak with the detective. *See* Exhibit 2 (Miranda Rights Form, Sept. 14, 2018). PITTS stated that he lived at 9103 Poplar Road and that he did lawn care as a source of income. When asked about the cocaine located in the residence, he replied, "It's all me man; she ain't got nothing to do with it."

On September 20, 2018, Detective Eastman obtained a search warrant for the four cell phones recovered from the Defendant's residence, which was issued by Judge Gerald V. Purnell of the District Court of Maryland for Worcester County. *See* Exhibit 3 (Search Warrant for Four Cell Phones, Sept. 20, 2018). The statement of probable cause was based on the results of the search warrant at the Defendant's residence on September 14, 2018, as well as Detective Eastman's training and experience in the use of cell phones by drug traffickers. On September 21, 2018,

---

[2] Detective Eastman later conducted a registration check of the three vehicles. The GMC Yukon and Mazda Protégé were registered to PITTS and Hammond. The Ford Explorer was registered to Hammond. The address listed on the registration for all three vehicles was 9103 Poplar Road, Berlin, Maryland 21811.

Corporal Rodney Wells conducted a forensic examination of the cell phones. The Motorola cell phone contained numerous text messages indicating that the Defendant was in the business of trafficking crack cocaine.

The Defendant was released from state custody on bail on September 24, 2018. In October and December 2018, members of the WCCET received information from two different confidential sources that PITTS was, again, actively distributing crack cocaine in Worcester County, including from his residence at 9103 Poplar Road.

On December 4, 2018, a federal grand jury returned a sealed indictment charging PITTS with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841. ECF 1. United States Magistrate Judge Beth P. Gesner issued a warrant for PITTS' arrest the same day. ECF 5.

On January 2, 2019, members of WCCET established surveillance outside PITTS' residence at 9103 Poplar Road. At approximately 8:45 a.m., Special Agent Kenneth Oland of Homeland Security Investigations (HSI) observed PITTS exit the residence and drive away in a black Chevrolet pickup truck. Members of the WWCET maintained constant surveillance of PITTS as he traveled from Germantown Road to Harrison Road. PITTS appeared to realize he was being followed. Detective Musgrave observed PITTS turn quickly into the driveway of 10407 Harrison Road and accelerate toward the rear of the residence. Detective Musgrave followed behind PITTS and saw that he rolled down his driver's side window, and then rolled it back up. Detective Musgrave activated his emergency equipment and stopped PITTS' vehicle in the front yard of 10407 Harrison Road. Agent Oland placed PITTS under arrest.

Detective Musgrave then walked back to the rear of the residence, where he had seen PITTS roll down his driver's side window. In that exact area, he recovered a clear plastic bag

containing a white rock-like substance that he recognized as crack cocaine. The bag was not dirty or wet from the morning dew, and appeared to have been dropped there recently. Based on the placement and condition of the bag, Detective Musgrave concluded that PITTS had thrown the bag from his vehicle in an effort to evade law enforcement. The bag weighed approximately 8 grams with packaging.



On January 2 and January 3, 2019, Detective Eastman obtained search warrants for the Defendant's residence at 9103 Poplar Road and for the LG cell phone recovered from PITTS' black Chevrolet truck, both of which were issued by Judge Gerald V. Purnell of the District Court of Maryland for Worcester County. *See* Exhibit 4 (Search Warrant for 9103 Poplar Road, Jan. 2, 2019); Exhibit 5 (Search Warrant for LG Cell Phone, Jan. 3, 2019). The statement of probable cause for both warrants was based on the previous drug trafficking investigation, the results of the September 14, 2018 search warrant at the Defendant's residence, the new information from confidential sources, and PITTS' arrest on January 2, 2019 and the recovery of the bag of suspected

7

crack cocaine. A LG cell phone contained numerous text messages indicating that the Defendant had continued to distribute crack cocaine after his release from state custody. Investigators did not recover any additional evidence from PITTS' residence at 9103 Poplar Road.

## II. ARGUMENT

### A. The Warrants Were Supported by Probable Cause, and the Officers Relied Upon Them in Good Faith

A judicial officer's determination that there is probable cause to issue a search warrant is a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). Probable cause means far "less than evidence which would justify condemnation or conviction," *Brinegar v. United States*, 338 U.S. 160, 175 (1949), and even less than that required by the preponderance-of-the-evidence standard, *see Gates*, 462 U.S. at 235; *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) ("[T]he probable cause standard does not require that the officer's belief be more likely true than false."). Probable cause may be established through information provided by any reliable source or sources, *Draper v. United States*, 358 U.S. 307, 313 (1959), or even through an anonymous tip that has been corroborated, *see Gates*, 462 U.S. at 241.

The Fourth Circuit has held "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Servance*, 394 F.3d 222, 230 (4th Cir.), *vacated on other grounds*, 544 U.S. 1047 (2005). Thus, warrants are to be upheld "even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought" to the place to be searched. *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005).

The statement of probable cause need not be written with "[t]echnical elaborate specificity," *United States v. Ventresca*, 380 U.S. 102, 108 (1965), and a "magistrate has the authority … to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant," *Bynum*, 293 F.3d at 197. "Because probable cause is evaluated through a totality-of-the-circumstances analysis rooted in common sense," a reviewing court should give "great deference" to an issuing judicial officer's decision to issue a warrant based on the facts before him. *Montieth*, 662 F.3d at 664.

Finally, the exclusionary does not apply when law enforcement officers rely in good faith on a warrant that later turns out to be invalid. *See United States v. Leon*, 468 U.S. 987 (1984). Under the *Leon* good faith exception, "a court should not suppress the fruits of a search conducted under the authority of a warrant, even a subsequently invalidated warrant, unless a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002). Officers are presumed to have acted in good faith except in certain narrowly defined circumstances: "(1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) if the issuing magistrate wholly abandoned his judicial role…(3) if the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) if under the circumstances of the case the warrant is so facially deficient…that the executing officers cannot reasonably presume it to be valid." *United States v. DeQuasie*, 373 F.3d 509, 519–20 (4th Cir. 2004).

Here, the search warrant for 9103 Poplar Road was facially valid and established probable cause to believe that evidence of drug trafficking would be found in the residence. Specifically, the facts supporting probable cause included the following:

- information from seven different confidential sources and one confidential informant that PITTS was distributing large amounts of crack cocaine in Worcester County, including from his residence at 9103 Poplar Road;

- prior WCCET surveillance operations in which law enforcement officers observed PITTS engage in activity consistent with drug trafficking;

- the September 11, 2018 traffic stop of a drug user who admitted he had just purchased cocaine from the Defendant at 9103 Poplar Road (and recovery of the suspected cocaine and stem pipe);

- a criminal records check, which showed that PITTS had numerous arrests and convictions for drug felony offenses, including a 2005 conviction for possession with intent to distribute crack cocaine; and

- the affiant's training and experience in drug trafficking investigations

*See* Ex. 1, at 10–19. The subsequent search warrants were supported by even more evidence, including the recovery of nearly 400 grams of crack cocaine, nearly $1500 in cash, drug trafficking paraphernalia, and four cell phones from PITTS' residence on September 14, 2018, and—with respect to the January 2019 warrants—new information from confidential informants and the recovery of an additional eight-gram bag of suspected crack cocaine at the time of PITTS' arrest on January 2, 2019. *See* Exs. 3–5. Measured under any standard, this evidence was more than sufficient to establish probable cause to believe that PITTS' residence and cell phones would contain evidence of drug trafficking.

Even if the court has doubts about the quantum of probable cause supporting any of the warrants discussed above, the motions to suppress should be denied because in each case, the executing officers relied in good faith on a facially valid warrant. *Leon*, 486 U.S. 897. There is no suggestion that the issuing judge was anything but neutral and detached, *see Lo-Ji Sales, Inc.*

*v. New York*, 442 U.S. 319, 326–27 (1979), or that he was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, *see Franks v. Delaware*, 438 U.S. 154 (1978). Moreover, the affidavits contained "sufficient indicia of probable cause so as not to render reliance on [them] entirely unreasonable." *Bynum*, 293 F.3d at 197–99; *United States v. Clutchette*, 24 F.3d 577, 582 (4th Cir. 1994). Indeed, the Fourth Circuit has applied the *Leon* good faith exception to the exclusionary rule in circumstances where the statement of probable cause was far more bare bones than the ones at issue here. *See, e.g.*, *United States v. Williams*, 548 F.3d 311 (4th Cir. 2008) (bare assertion that the targeted dwelling was known to be the defendant's, without explaining how); *United States v. Harris*, 215 Fed. Appx. 262, 272 (4th Cir. 2007) (unpub.) (no indication that the defendant lived in the targeted premises, let alone grounds for believing so).

### B. The Defendant's Statements Followed Proper Miranda Warnings and Made Were Made Voluntarily

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In order to protect this right, the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), adopted prophylactic procedural rules that must be followed in custodial interrogations. *United States v. Parker*, 262 F.3d 415 (4th Cir. 2001). In general, any statements elicited from a suspect without first advising the suspect of his rights to remain silent and to counsel are inadmissible in the prosecution's case-in-chief. *Id.* An individual is "in custody" for *Miranda* purposes when, under the totality of the circumstances, "a suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). "Interrogation" for *Miranda* purposes means "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). On

11

the other hand, "volunteered statements"—that is, statements "given freely and voluntarily without any compelling influences"—"are not barred by the Fifth Amendment and their admissibility is not affected by" the Supreme Court's holding in *Miranda*. *Miranda*, 384 U.S. at 478.

Statements made after a *Miranda* waiver must also be voluntary. The Supreme Court has held that "[c]oercive police activity is a necessary predicate to the finding that a confession is not voluntary." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *see also United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002). Examples of coercive police activity include prolonged detention and interrogation without sleep or rest, administration of "truth serums," physical abuse, and threats of physical abuse. *See Cristobal*, 293 F.3d at 140. "The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (en banc). Rather, "[t]he proper inquiry 'is whether the defendant's will has been 'overborne" or his 'capacity for self-determination critically impaired'" by police conduct. *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)); *see also Braxton*, 112 F.3d at 780. In applying this test, "courts must consider the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation.'" *Braxton*, 112 F.3d at 780 (quoting *Pelton*, 835 F.2d at 1071). Ordinarily, courts do not suppress post-Miranda statements unless they are "coerced confessions procured by means 'so offensive to a civilized system of justice that they must be condemned.'" *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (quoting *Miller v. Fenton*, 474 U.S. 104, 109 (1985)).

The admissibility of the Defendant's statements in this case is not a close question. First, the Defendant's statements were preceded by a proper Miranda advisement and a knowing and

voluntary waiver of those rights. In fact, PITTS was advised of his Miranda rights twice—once verbally at the scene of his arrest, and a second time at the Worcester County Sheriff's Office, when he was presented with a Miranda advisement form that was read aloud to him. *See* Ex. 2. After being properly advised, the Defendant indicated that he understood his rights, signed a written waiver, and agreed to answer questions. At no time did the police make any threats or promises to induce the Defendant to waive his rights.

Second, the statements at issue were voluntary. There are no circumstances indicating that the Defendant's "will [was] overborne or [that] his capacity for self-determination [was] critically impaired." *Braxton*, 112 F.3d at 780 (quoting *Pelton*, 835 F.2d at 1071). As discussed above, the Defendant was legally detained and properly advised of his rights. The interview was very brief. The police were cordial and professional, and they did not make threats or promises or otherwise engage in coercive conduct. *See Connelly*, 479 U.S. at 167 ("[C]oercive police activity is a necessary predicate to the finding that a [statement] is not 'voluntary' within the meaning of the Due Process Clause."). This is not a case where law enforcement officers "attempted to 'wring[] a confession out of an accused against his will,'" *Cristobal*, 293 F.3d at 141 (quoting *Blackburn v. Alabama*, 361 U.S. 199, 206–07 (1960)), or "went to extraordinary lengths to extract from [the defendant] a confession by psychological means," *Braxton*, 112 F.3d at 786 (quoting *Ferguson v. Boyd*, 566 F.2d 873, 877 (4th Cir. 1977) (per curiam)). Accordingly, the Defendant's motion to suppress his statements should also be denied.

### III. CONCLUSION

For the foregoing reasons, the government respectfully submits that the Defendant's motions should be denied.

        Respectfully submitted,

        Robert K. Hur
        United States Attorney

By: _____/s/_____
        Christina A. Hoffman
        Assistant United States Attorneys
        36 South Charles Street
        Fourth Floor
        Baltimore, Maryland  21201
        (410) 209-4800

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 3, 2020, I caused a copy of the foregoing Government's Consolidated Motions Response to be filed electronically with the Court using the CM/ECF system and served to counsel of record.

                                                /s/
                                      Christina A. Hoffman
                                      Assistant United States Attorney